UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARCO HERNANDEZ,

                    Petitioner,

        -against-                       MEMORANDUM & ORDER
                                        10-CV-1791(JS)

JOHN LEMPKE, Superintendent of
Orleans Correctional Facility,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Marco Hernandez, pro se
                    07-A-1806
                    Orleans Correctional Facility
                    3531 Gaines Basin Road
                    Albion, NY 14411

For Respondent:     Jason Richards, Esq.
                    Nassau County District Attorney's Office
                    262 Old Country Road
                    Mineola, NY 11501

SEYBERT, District Judge:

        Marco  Hernandez  ("Petitioner")  petitions  this  Court

pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

For the following reasons, his Petition is DENIED.

                        BACKGROUND

I.  Factual Background

        On  March  11,  2006,  Petitioner  and  Jose  Arevalo

approached  Julio  Apolinar  as  Apolinar  and  his  mother  were

walking  on  a  neighborhood  street  in  Westbury,  New  York.

(Resp't's Br., Docket Entry 9, at 1; see also Trial Tr. 679:14-

682:18.)  After Apolinar told his mother to go home, Petitioner and Arevalo "proceeded to terrorize and humiliate [Apolinar]." (Resp't's Br. at 1.)  Arevalo had a beer bottle in his hand; Petitioner had a knife in his hand.  (Trial Tr. 684:19-25.) Petitioner "yanked" Apolinar's neck-chains off of Apolinar. (Trial Tr. 687:11-20.)  Apolinar's sister's boyfriend, Francisco Roque, saw Petitioner and Arevalo confronting Apolinar at the same time.  (Trial Tr. 951:10-954:13.)

After stealing Apolinar's chains and shirt, they returned to the restaurant from where they had first appeared. (Trial Tr. 689:13-21.)  Apolinar went home and, upon arriving, saw his sister calling the police.  (Trial Tr. 689:25-690:25; 803:15-17.)  The police arrived and took Apolinar to canvass the area.  (Trial Tr. 691:7-23.)

After Apolinar identified Arevalo standing in front of a nearby deli, the police officers arrested Arevalo and Petitioner in the deli's parking lot.  (Trial Tr. 692:15-696:18.)  The police recovered Apolinar's chains from Petitioner's back pocket.  (Trial Tr. 533:13-21.)  Petitioner and Arevalo were then taken to a Nassau County police station, where Detective Luis Salazar acted as a Spanish language interpreter during the custodial questioning of both suspects. (Hr'g Tr. 60:19-61:14.)  Detective Salazar read Petitioner his Miranda rights and Petitioner signed the Miranda card.  Salazar

then began to ask Petitioner questions, in Spanish, related to the robbery.  (Hr'g Tr. 61:15-23.)[1]  Salazar prepared a written statement based upon Petitioner's oral statements.  (Hr'g Tr. 63:20-22.)  Salazar read Petitioner the written statement, Petitioner told Salazar the statement was accurate, and Petitioner signed the statement.  (Hr'g Tr. 65:20-66:8.)  In that statement, "[P]etitioner admitted that he and Arevalo had used a knife to rob Apolinar.  Arevalo likewise told [Salazar] that he and [Petitioner] had committed the robbery."  (Resp't's Br. at 2.)

## II.  Legal Background

Petitioner and Arevalo were each charged with Robbery in the First Degree (New York Penal Law ("N.Y.P.L.") § 160.15(3)), Robbery in the Second Degree (N.Y.P.L. § 160.10(1)), Grand Larceny in the Fourth Degree (N.Y.P.L. § 155.30(5)), and Criminal Possession of Stolen Property in the Fifth Degree (N.Y.P.L. § 165.40).  (See, e.g., Trial Tr. 316:22-317:18.)  Petitioner and Arevalo were tried jointly.  (See, e.g., Trial Tr. 14-22.)

After a pre-trial suppression hearing, the trial court held that Petitioner knowingly, intelligently, and voluntarily

---

[1] After Petitioner informed Salazar that he did not read Spanish well, Salazar read the Miranda card "word by word, line by line in Spanish."  (Hr'g Tr. 62:19-63:3.)  Petitioner did not indicate to Salazar that he had a problem understanding this recitation of his Miranda rights.  (Hr'g Tr. 63:17-19.)

waived his <u>Miranda</u> rights as to his written statements. (<u>See</u> Amended Order, Docket Entry 9-4, at 2.) The court held, therefore, that the written statements were admissible during trial. (<u>See</u> Amended Order at 2.)

On October 17, 2006, at the conclusion of a jury trial, Petitioner and Arevalo were each found guilty of Robbery in the Second Degree, Grand Larceny in the Fourth Degree, and Criminal Possession of Stolen Property in the Fifth Degree. (Trial Tr. 1159:11-1160:18.) Petitioner was sentenced as follows: (1) for the robbery conviction, eight years imprisonment and five years of post-release supervision; (2) for the grand larceny conviction, one-and-one-third-to-four years imprisonment; and (3) for the criminal possession of stolen property conviction, one year of imprisonment. (<u>See</u> Pet'r's Appellate Br., Ex. A, Docket Entry 1-2, at 1.[2]) These sentences were to run concurrently. (<u>See</u> Pet'r's Appellate Br. at 1.)

Petitioner appealed the conviction to the New York Appellate Division, Second Department. (<u>See</u> <u>generally</u> Pet'r's Appellate Br.) Petitioner argued that: (1) the trial court

_____

[2] Petitioner did not file a supporting memorandum with his Petition. The Petition refers, however, to Petitioner's state appellate brief, which was attached the Petition. (<u>See</u> Pet., Ex. A). Petitioner filed two additional briefs: a brief regarding a "Supplemental Argument" as to Petitioner's <u>Miranda</u> claims (Docket Entry 7) and a Reply to Respondent's Opposition to the Petition (Docket Entry 12). The Court has reviewed all briefs.

erred in denying Petitioner's motion to sever the trial; (2) Petitioner's Miranda waiver was not made knowingly, intelligently, and voluntarily; (3) the jury's verdict was insufficiently supported by law; (4) the trial court erred by not giving a missing witness charge to the jury; and (5) Petitioner's sentence was harsh and excessive. (See, e.g., Pet'r's Appellate Br. at 39-65.)

On November 10, 2009, the Appellate Division affirmed the judgment. People v. Hernandez, 67 A.D.3d 820, 889 N.Y.S.2d 218 (N.Y. App. Div. 2d Dep't 2009). The court held that: (1) the trial court did not err in denying Petitioner's severance motion; (2) the court had no basis to disturb the trial court's Miranda holding; (3) the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt; (4) Petitioner's missing witness charge claim was untimely and, substantively, the trial court's ruling was not improper; and (5) Petitioner's sentence was not excessive. Hernandez, 67 A.D. 3d 821.

Petitioner applied for leave to appeal to the New York Court of Appeals. Petitioner's application included three of the five claims that were in his Appellate Division appeal. These claims regarded the trial court's denial of Petitioner's: (1) severance motion; (2) pre-trial motion to exclude Petitioner's custodial statements (Miranda); and (3) motion for

a missing witness charge. (<u>See</u> Pet'r's Nov. 17, 2009 Letter Appl., Docket Entry 9-23.) The New York Court of Appeals denied Petitioner's application on January 15, 2010. <u>People v. Hernandez</u>, 13 N.Y.3d 939, 922 N.E.2d 918, 895 N.Y.S.2d 329 (N.Y. 2010).

On December 9, 2009, Petitioner filed a motion to vacate judgment in the County Court of Nassau County. (<u>See</u> Motion to Vacate J., Docket Entry 9-26). Petitioner argued that the trial court: (1) should have granted Petitioner's motion to sever and (2) violated Petitioner's Confrontation Clause rights by relying on a letter from the district attorney and a Nassau County Probation Department report. (<u>See</u> Affidavit in Support of Motion to Vacate J., Docket Entry 9-26, at 9, 11.) The County Court denied Petitioner's motion because, the court held, the motion was procedurally barred. (<u>See</u> March 8, 2010 Order of the County Court ("March Order"), Docket Entry 9-29.) The Appellate Division denied Petitioner's leave to appeal the County Court's holding. (<u>See</u> August 5, 2010 Decision & Order ("August 2010 Order"), Docket Entry 13, at 2.)

III. <u>The Petition</u>

Petitioner asserts the following grounds: (1) the trial court erred in denying Petitioner's motion to sever the trial; (2) Petitioner's <u>Miranda</u> waiver was not made knowingly, intelligently, and voluntarily; (3) the jury's verdict was

insufficiently supported as a matter of law; (4) the trial court erred by not giving a missing witness charge to the jury; (5) Petitioner's Confrontation Clause right was denied as to Arevalo's trial statements; and (6) Petitioner's Confrontation Clause right was denied as to the district attorney's letter and the Nassau County Probation Department report. (<u>See</u> Pet. ¶ 13.)

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the Petition.

## I.  Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." <u>Harrington v. Richter</u>, --- U.S. ----, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." <u>Id.</u> at § 2254(d)(1). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen v. Pinholster</u>, --- U.S. ----, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. <u>See</u> 28 U.S.C. § 2254(e)(1).

A.  <u>Exhaustion</u>

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly to present the federal claim in state court." <u>Jones v. Keane</u>, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." <u>Id.</u> at 295 (internal quotation marks and citations omitted).

B.  <u>Procedural Default</u>

In all cases in which a state prisoner has
defaulted his federal claims in state court
pursuant to an independent and adequate
state procedural rule, federal habeas review
of the claims is barred unless the prisoner

> can demonstrate cause for the default and
> actual prejudice as a result of the alleged
> violation of federal law, or demonstrate
> that failure to consider the claims will
> result in a fundamental miscarriage of
> justice.

Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991).

The Second Circuit "has held that 'federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.'" Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (quoting Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); citing Harris v. Reed, 489 U.S. 255, 264 n.10, 109 S. Ct. 1038, 1044 n.10, 103 L. Ed. 2d 308 (1989); Wedra v. Lefevre, 988 F.2d 334, 338-39 (2d Cir. 1993)).

## II. Ground One: Motion to Sever

Petitioner maintains that the trial court erred by denying his motion to sever his trial from Arevalo's. (See Pet'r's Appellate Br. at 39-46.) Petitioner's trial counsel, Kenneth Ross ("Ross"), made two motions for severance. First, Ross noted that Arevalo's original trial attorney became unavailable to represent Arevalo. (Trial Tr. 3:15-20.) Arevalo's new counsel, Ross argued, was unfamiliar with how the

two attorneys prepared to argue the cases. (Trial Tr. 4:7-17 ("[Arevalo's original counsel] and I discussed the case together. We did hearings together. Current co-counsel has not, to my knowledge, spoken to [the original counsel] or myself to discuss the case. I believe there are inconsistent defense that current co-counsel and I now have, which I do not believe existed when [Arevalo's original counsel] was counsel on the case.").) Ross was concerned about how the physical appearance of Arevalo's new counsel (specifically, his stained clothing) would affect Petitioner as well as new counsel's lack of experience. (Trial Tr. 4:18-23; 5:6-18.) Arevalo's new counsel opposed Petitioner's motion as did the prosecution. (Trial Tr. 6:1-7:17; 8:1-9:17.). The trial court denied Petitioner's motion without prejudice for renewal. (Trial Tr. 9:25-10:13.)

Petitioner renewed the motion when proceedings recommenced. Petitioner argued that the co-defendants would be presenting conflicting defenses. (See, e.g., Trial Tr. 61:8-10.) After reviewing the matter, the trial court denied Petitioner's motion to sever. (Trial Tr. 68:23-69:4.)

A. Standard

"[J]oinder of offenses has long been recognized as a constitutionally acceptable accommodation of the defendant's right to a fair trial." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993). "The decision whether to grant a severance

motion is committed to the sound discretion of the trial court."
New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1082 (2d
Cir. 1988)).

"Joinder of offenses rises to the level of a
constitutional violation only if it 'actually render[s]
petitioner's state trial fundamentally unfair and hence,
violative of due process.'" Herring, 11 F.3d at 377 (alteration
in original) (quoting Tribbitt v. Wainwright, 540 F.2d 840, 841
(5th Cir. 1976); citing United States v. Lane, 474 U.S. 438, 446
n.8, 106 S. Ct. 725, 730 n.8, 88 L. Ed. 2d 814 (1986)). "In
considering whether a violation of due process has occurred, the
emphasis must be on the word 'actually'; for, viewed clearly, it
is only the consequences of joinder, over which the trial judge
has much control, and not the joinder itself, which may render
the trial 'fundamentally unfair.'" Id. (citing United States ex
rel. Evans v. Follette, 364 F.2d 305, 306 (2d Cir. 1966)).

"[W]here a defendant is claiming a due process
violation based upon joinder of offenses, he must, to succeed,
go beyond the potential for prejudice and prove that actual
prejudice resulted from the events as they unfolded during the
joint trial." Id. at 377-78 (citing Tribbitt, 540 F.2d at 841
(emphasis in original); Opper v. United States, 348 U.S. 84, 94-
95, 75 S. Ct. 158, 165, 99 L. Ed. 101 (1954)).

B.  Analysis

The Appellate Division held that "[t]he trial court did not err in denying [Petitioner's] motion to sever[.]" Hernandez, 67 A.D. 3d at 821.  The court held that "the record [did] not reveal an irreconcilable conflict between [Petitioner's] defense and [Arevalo's] defense."  Id.

Petitioner fails to show how joinder, in the present case, 'actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process.'" Herring, 11 F.3d at 377.  As discussed supra and infra, Apolinar testified that Petitioner robbed him; Roque testified that he saw Petitioner confront Apolinar at the time of the commission of the crimes; Officer Iovino testified that he found Apolinar's chains on Petitioner's person during Petitioner's arrest; and Petitioner admitted he committed the crimes in a statement to Detective Salazar.  Severance would not have changed this testimony or the admission of Petitioner's written statement. Moreover, as Respondent argues, "the joint trial presented an essentially unified defense" regarding the co-defendants' argument that the event was a drunken encounter, not a robbery, as well as the co-defendants' claim that the police contrived the written admissions.  (Resp't's Br. at 8-10.)  Petitioner received the benefit of that unified defense.

"Petitioner has not demonstrated how joinder actually prejudiced his trial, especially in light of the overwhelming evidence of guilt of all crimes charged." Willis v. Duncan, No. 00-CV-4171, 2003 WL 21845664, at *6 (E.D.N.Y. August 4, 2003) (citing Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). The Appellate Division's holding on this issue was not contrary to clearly established Federal law. See 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner's claim on ground one is DENIED.

## III. Ground Two: Miranda Waiver

Petitioner argues that his intoxication at the time of his custodial interview made his statements inadmissible. (See Pet'r's Appellate Br. at 47-49.) He additionally asserts, that the statements should have been inadmissible because Petitioner is "uneducated and mentally limited." (Pet'r's Appellate Br. at 49-50.) Petitioner argues that the combination of these circumstances makes his statements inadmissible. (See Pet'r's Appellate Br. at 51.)

### A. Standard

"[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." Miranda v. Arizona, 384 U.S. 436, 471, 86 S. Ct. 1602, 1626, 16 L. Ed. 2d 694 (1966). "[T]his warning is an absolute prerequisite to

interrogation.  No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead."  Id. at 471-72.

"A statement made by the accused 'during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived Miranda rights when making the statement.'"  United States v. Taylor, 745 F.3d 15, 23 (2d Cir. 2014)[3] (quoting Berghuis v. Thompkins, 560 U.S. 370, 382, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010)).

The Court "look[s] at the totality of circumstances surrounding a Miranda waiver and any subsequent statements to determine knowledge and voluntariness."  Id. (citing Oregon v. Elstad, 470 U.S. 298, 309, 105 S. Ct. 1285, 84 L. Ed. 2d 222 (1985)).  "In that context, 'knowing' means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and 'voluntary' means by deliberate choice free from intimidation, coercion, or deception."  Id. (citing United States v. Plugh, 648 F.3d 118, 127 (2d Cir. 2011)).  "In general, a suspect who reads, acknowledges, and signs an 'advice of rights' form before making a statement has

_____

[3] This decision of the Second Circuit Court of Appeals superseded its early decision.  See United States v. Taylor, 736 F.3d 661 (2d Cir. 2013).

knowingly and voluntarily waived Miranda rights." Id. (citing Plugh, 648 F.3d at 127-28).

"It is difficult to determine whether a confession is voluntary; case law 'yield[s] no talismanic definition' for the term. [] It is clear, however, that when 'a person is unconscious or drugged or otherwise lacks capacity for conscious choice,' a confession cannot be voluntary." Id. at 24 (citing Schneckloth v. Bustamonte, 412 U.S. 218, 224, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)); see also Mincey v. Arizona, 437 U.S. 385, 401, 98 S. Ct. 2408, 2418, 57 L. Ed. 2d 290 (1978) (statements were involuntarily made by "seriously and painfully wounded man on the edge of consciousness.")

"[E]vidence of a defendant's intoxication with alcohol or a controlled substance does not preclude a finding of a knowing and intelligent waiver provided that they appreciate the nature of the waiver." Alvarez v. Keane, 92 F. Supp. 2d 137, 150 (E.D.N.Y. 2000) (citing Avincola v. Stinson, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999); United States v. DiLorenzo, No. 94-CR-0303, 1995 WL 366377, at *8-9 (S.D.N.Y. June 19, 1995)). Further, "Defendants with limited cognitive abilities or below average I.Q. levels may . . . be capable of a knowing and intelligent Miranda waiver." Id. (citing United States v. Murgas, 967 F. Supp. 695, 707-08 (N.D.N.Y. 1997)).

"'Absent clear and convincing evidence to the contrary . . . the state court's decision that petitioner's degree of intoxication was not so great as to render him unable to execute a valid waiver of rights will be presumed to be correct.'" Oakes v. Conway, No. 10-CV-0318, 2011 WL 3236201, at *6 (W.D.N.Y. July 28, 2011) (ellipsis in original) (quoting Shields v. Duncan, No. 02-CV-6713, 2003 WL 22957008, at *14 (E.D.N.Y. Oct. 20, 2003)).

Moreover, "an inability to read or write does not, by itself, establish that the suspect is incapable of making a voluntary and intelligent decision . . . In this case, defendant has not alleged that his illiteracy stems from a cognitive impairment or that his impairment renders him unable to understand his rights." United States v. Gaines, 295 F.3d 293, 299 (2d Cir. 2002) (internal citations omitted).

B.  Analysis

The Appellate Division held that there was "no basis to disturb the [trial] court's determination that [Petitioner] knowingly, voluntarily, and intelligently waived his Miranda rights." Hernandez, 67 A.D.3d at 820.

The Court presumes, to begin its analysis, that the waiver was knowing and voluntary because Petitioner signed the written statement. See Taylor, 2014 WL 814861, at *5. Further, as reviewed supra, Nassau County Detective Luis Salazar spoke to

16

Petitioner, in Spanish, during the custodial interrogation. After Petitioner said he did not read or write Spanish well, Salazar read the Miranda card "word by word, line by line in Spanish." (Hr'g Tr. 62:19-63:3.)[4] Petitioner indicated, in Spanish, that he understood his rights. (Hr'g Tr. 110:9-23; 111:4-11.) After questioning Petitioner, Salazar prepared a written statement based upon Petitioner's oral statements. (Hr'g Tr. 63:20-22.) Salazar read Petitioner the written statement, Petitioner told Salazar the statement was accurate, and Petitioner signed the statement. (Hr'g Tr. 65:20-66:8.)

The Appellate Division's holding on this issue was not contrary to clearly established Federal law. See 28 U.S.C. § 2254(d)(1). Petitioner was read his Miranda rights clearly and slowly. Petitioner signed the Miranda card and signed the written statement prepared by Salazar.

> The record of the suppression hearing established that, while petitioner appeared to be intoxicated . . . [P]etitioner appeared to be coherent, responsive to questions, and showed no signs of slurred speech. [] Furthermore, [P]etitioner never indicated to the police that he was having difficulty understanding the conversation or functioning because of intoxication. [] Based on this evidence, the state courts properly concluded that [P]etitioner's intoxication did not prohibit him from knowingly, voluntarily, and intelligently waiving his Miranda rights, and

---

[4] Petitioner did tell Salazar that he could read and write Spanish at some level. (See, e.g., Hr'g Tr. 102:2-8.)

> [P]etitioner has presented no evidence to
> the contrary. Therefore, the state court's
> factual findings on this issue must be
> presumed to be correct on federal
> habeas review.

Oakes, 2011 WL 3236201, at *6 (citing 28 U.S.C.
§ 2254(e)(1); Shields v. Duncan, No. 02-CV-6713, 2003 WL
22957008, at *14 (E.D.N.Y. Oct. 20, 2003)).

Petitioner's physical illness and intoxication do not
rise to a sufficient level: there was no evidence that
Petitioner stood on "the edge of consciousness." Mincey, 437
U.S. at 401. As to cognition, Petitioner does argue, that he is
"uneducated and mentally limited." (Pet'r's Reply, Docket Entry
12, at 7.) Generally, however, there was no evidence about
Petitioner's alleged cognitive issues. Moreover, there was no
evidence that Petitioner lacked the mental capacity to knowingly
waive his Miranda rights. Petitioner told Salazar he could read
and write Spanish, though not well. "[A]n inability to read or
write does not, by itself, establish that the suspect is
incapable of making a voluntary and intelligent decision."
Gaines, 295 F.3d at 299. Petitioner's alleged illiteracy is not
enough, especially since Salazar read Petitioner his Miranda
rights line by line. Accordingly, Petitioner's claim on ground
two is DENIED.

IV.  Ground Three: Sufficiency of Evidence

Petitioner argues that "there were numerous inconsistencies in the testimony of the various witnesses[.] [D]iscrepancies that could only signify that someone was fabricating testimony." (Pet'r's Appellate Br. at 52-53.)

A.  Standard

"A person is guilty of robbery in the second degree when he forcibly steals property and when . . . [h]e is aided by another person actually present[.]" (N.Y.P.L. § 160.10(1).) "A person is guilty of grand larceny in the fourth degree when he steals property and when . . . [t]he property, regardless of its nature and value, is taken from the person of another[.]" (N.Y.P.L. § 155.30(5).) "A person is guilty of criminal possession of stolen property in the fifth degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." (N.Y.P.L. § 165.40.)

The Court "review[s] the decision of the state court under the federal sufficiency standard set forth by the Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)." Gutierrez v. Smith, 702 F.3d 103, 113 (2d Cir. 2012) (citing Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012)). "The relevant question under Jackson is whether, 'after

viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Id.</u> (emphasis in original) (citing <u>Jackson</u>, 443 U.S. at 319). "When considering the sufficiency of the evidence of such a state conviction, a federal court 'must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor,' and, in doing this, 'must look to state law to determine the elements of the crime.'" <u>Id.</u> (citing <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 811 (2d Cir. 2000)).

B. <u>Analysis</u>

The Appellate Division held, after noting the deference it must give to the jury's observations during the trial, that it was "satisfied that the verdict of guilt was not against the weight of the evidence." <u>Hernandez</u>, 67 A.D.3d at 821.

As noted <u>supra</u>, Apolinar testified that Petitioner approached him with a knife in his hand. (Trial Tr. 684:11-25.) Petitioner "yanked" Apolinar's neck-chains off of Apolinar. (Trial Tr. 687:11-20.) Roque saw Petitioner standing near Apolinar at the same time. (Trial Tr. 951:10-952:12.) After his sister called the police, Apolinar identified Arevalo standing in front of a nearby deli and the police officers

20

arrested Arevalo and Petitioner in the deli's parking lot. (Trial Tr. 692:15-696:15.) Office Iovino testified that he recovered Apolinar's chains from Petitioner's back pocket. (Trial Tr. 533:13-21.) The testimonies of Apolinar, Officer Iovino, and Roque as well as Petitioner's own admissions are sufficient to establish his guilt of the above-referenced crimes.

Petitioner's argument as to inconsistencies does not overrule the weight of the evidence, most especially his written statements of admission. After viewing the evidence, the Court finds a rational fact-finder could have found the essential elements were proven beyond a reasonable doubt. See Gutierrez, 702 F.3d at 113. Accordingly, Petitioner's claim on ground three is DENIED.

V.   Ground Four: Missing Witness Jury Charge

Petitioner argues that the trial court should have given the jury a missing witness charge as to Apolinar's mother. "There's been various testimony [that] . . . she was there at the time of the commission of the alleged offense. Maybe she saw something, maybe she didn't. She [witnessed] different people who were or were not talking to the police." (Trial Tr. 974:1-7.)

A.  Standard

"'Whether a missing witness charge should be given lies in the sound discretion of the trial court.'" _Reid v. Senkowski_, 961 F.2d 374, 377 (2d Cir. 1992) (citing _United States v. Torres_, 845 F.2d 1165, 1170-71 (2d Cir. 1988); _United States v. Saa_, 859 F.2d 1067, 1076 (2d Cir. 1988)).

"Habeas corpus relief is not available to set aside a conviction on the basis of erroneous jury instruction or for failure to deliver a [jury] charge unless the trial was rendered so fundamentally unfair thereby, amounting to a denial of due process." _Smithwick v. Walker_, 758 F. Supp. 178, 187 (S.D.N.Y. 1991) (citing _Shepherd v. Nelson_, 432 F.2d 1045 (9th Cir. 1970)).

B.  Analysis

As Respondent notes, "the uncalled witness, [Apolinar's] mother, was not present during the robbery because he had sent her away just before it happened[]. At most, [she] could have identified [Petitioner and Arevalo] as the men who confronted her son, but such testimony would have been cumulative and of limited materiality." (Resp't's Br. at 17 (citing Trial Tr. 682:23-683:12).)

As she was not present during the commission of the crime or at the time of arrest, her testimony as to the identity of the perpetrators would, indeed, have been cumulative.

Moreover, as Petitioner admitted that he committed the crime, he, by definition, admitted to being at the scene of the crime. As Petitioner was not denied due process regarding the missing witness charge, Petitioner's fourth claim is DENIED.

VI.  <u>Ground Five and Six: Confrontation Clause Violations</u>

Petitioner argues his Confrontation Clause rights were violated when: (i) jurors heard Arevalo's trial testimony even though Petitioner did not have the opportunity to cross-examine Arevalo; and (ii) the sentencing court reviewed the Nassau County Probation Department's report and District Attorney's letter before imposing sentence.  (<u>See</u> Affidavit in Support of Motion to Vacate J.)

Petitioner failed to directly appeal these issues, and did not raise them until his Motion to Vacate Judgment.  As noted <u>supra</u>, the County Court held that Petitioner's motion was procedurally barred.  (<u>See</u> March Order.)   The County Court held that "[w]here, as here, sufficient facts appear on the record to permit adequate review of the claims raised by the defendant in his motion to vacate judgment and the claims were raised and determined on appeal, or [Petitioner] unjustifiably failed to raise them on appeal; the denial of the motion is mandatory." (March Order (citation omitted).)   A motion to vacate "may not be used as a substitute for direct appeal of claims or as a method for a second appeal."   (March Order (citation omitted).)

The Appellate Division denied Petitioner's leave to appeal the County Court's holding.  (See August 2010 Order, at 2.)

The State courts expressly relied on a procedural default to deny the motion, thus habeas review of the claim is foreclosed.  See Glenn, 98 F.3d at 724.  Petitioner fails to "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750. Accordingly, the Petition on these grounds is DENIED.

CONCLUSION

For the reasons set forth above, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED.  Because there can be no debate among reasonable jurists that Petitioner was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and to mark this matter CLOSED.

SO ORDERED.

Dated:  July  2 , 2014              /s/ JOANNA SEYBERT
        Central Islip, NY          Joanna Seybert, U.S.D.J.